**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| DICK RAMIREZ | * |
| Plaintiff | * |
| v. | * Civil No. 04-2186(SEC) |
| PUERTO RICO POWER AUTHORITY, et al | * |
| Defendants | * |

**OPINION AND ORDER**

Before the Court are the Puerto Rico Power Authority (PREPA)'s Motion for Summary Judgment (Docket # 75) and Plaintiff's opposition thereto (Docket # 94). Plaintiff, on the other hand, has moved to strike some witnesses and documentary evidence (see, Dockets ## 99 & 100) which PREPA announced for the first time in the Pretrial Order. Because PREPA did not oppose these motions they were deemed as unopposed. See, Docket # 114. After reviewing the parties' filings, the evidence on the record and the applicable law, PREPA's Motion for Summary Judgment will be **GRANTED in part and DENIED in part,** Plaintiff's Motion to Strike Witnesses (Docket # 99) will be **GRANTED** and his Motion to Strike Documentary Evidence (Docket # 100) will be **GRANTED in part and DENIED in part**.

**Standard of Review**

Fed. R. Civ. P. 56(b) provides that: "A party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56©; See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248(1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77

(1st Cir. 2005). At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party' and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005) (quoting from Garside, 895 F.2d at 48 (1st Cir. 1990). By like token, 'material' "means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." Rojas-Ithier v. Sociedad Española de Auxilio Mutuo, 394 F.3d 40, 42-43 (1st Cir. 2005) (citations omitted). Therefore, there is a trial-worthy issue when the "evidence is such that there is a factual controversy pertaining to an issue that may affect the outcome of the litigation under the governing law, and the evidence is sufficiently open-ended to permit a rational fact-finder to resolve the issue in favor of either side." Id (citations omitted).

Once the party moving for summary judgement has established an absence of material facts in dispute, and that he or she is entitled to judgement as a matter of law, the 'party opposing summary judgement must present definite, competent evidence to rebut the motion.' Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (quoting from Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). However, "as to any issue where the movant's documents do not establish the absence of a genuine issue of fact, summary judgment must be denied, even if no opposing evidentiary matter is presented." Luckett v. Bethlehem Steel Corp., 618 F.2d 1373, 1383 (10th Cir. 1980), citing, Adickes v. Kress & Co., 398 U.S. 144, 159 (1970)(stating that "[b]ecause respondent did not

**Civil No. 04-2186(SEC)**                                                                 3
_____

meet its initial burden of establishing the absence of a policeman in the store, petitioner here was not required to come forward with suitable opposing affidavits.")

When determining whether to grant summary judgment, the Court may not weigh the evidence. Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994). Summary judgment "admits of no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." Id. (citing Greensburg v. P.R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. Id at 684.

**Procedural and Factual Background**:

Plaintiff in this case is Dick Ramírez, a current employee of PREPA, who alleges that Defendants harassed him at work, transferred him to another office with inferior working conditions, and denied him promotions to better positions within PREPA to which he applied, all because of his political affiliation, and without Due Process of Law. He alleges that he was discriminated against because in 2003 he openly supported Raúl Rosado, Esq. for President of Energía Popular (hereinafter EP-a political group composed of PREPA employees affiliated to the PDP-), and Mr. Rosado's ideas were at odds with those promoted by Defendants Ana Blanes, PREPA's Human Resources Director, and Héctor Rosario, PREPA's Executive Director.[1] Plaintiff avers that Defendants openly endorsed Engineer Valeriano Otero, Rosado's rival, for the position of President of EP. Otero was eventually selected. Thereafter, Plaintiff contends, Co-defendants Blanes and Rosario, together with Otero, harassed plaintiff and took retaliatory actions against him because of his association with Rosado. See, Complaint, Docket # 1, ¶¶ 15-49. Among these alleged retaliatory acts

---

[1] Plaintiff has voluntarily dismissed his claims against these Co-defendants. See, Dockets ## 98 & 104. Furthermore, all claims against other individual co-defendants were dismissed. See, Dockets # 36 & 38. Therefore, the only Defendant before the Court at this point is PREPA.

were Plaintiff's transfer to the Rincón Office, Defendants' total disregard for Plaintiff's opinion in matters related to his job functions, and PREPA's refusal to consider Plaintiff for various vacant positions with supervisory responsibilities and higher benefits, even when he was allegedly qualified. He further contends that Blanes and Rosario had promised two of the aforementioned positions to Antonio Pérez and Winilda Roldán, who Plaintiff alleges were not qualified for the positions, only because they actively promoted Otero's candidacy, who Defendants endorsed, in violation of the merit principle and PREPA's internal regulations.

Defendants have moved for summary judgment in their favor arguing that(1) Plaintiff cannot establish that the process followed by Defendants in filling the vacant positions for which he applied was carried out in a discriminatory manner; (2) he has suffered no adverse employment action for which the existence of a discriminatory animus may be inferred; (3) some of Plaintiff's claims are time barred, and (4) that Plaintiff's due process claims are without merit.

Before setting forth the relevant uncontested facts, the Court must first note that Defendants' motion for summary judgment made it extremely difficult for the Court to organize the facts in a comprehensible and workable manner. Their Statement of Uncontested Facts (SUF) lacks organization; chronological, thematic or otherwise. It appears that Defendants included the facts in the SUF in the order the deponents stated them during their depositions, without any effort to follow a logical organization.[2] After an exacting review of Defendants' motion, Plaintiff's opposition thereto, and the record as a whole, the Court finds

---

[2] Defendants' statement also included as uncontested facts statements made by deponents with apparent lack of knowledge on the matter, which complicates the Court's review of the supporting documentation to determine whether a fact is uncontested. Moreover, Defendants included many facts that the Court finds irrelevant; Defendants do not mention these facts in their memorandum of law, which proves their irrelevance.

**Civil No. 04-2186(SEC)**                                                                                          5
_____

the following facts are uncontested.³

Plaintiff is a PREPA employee who is and well-known member of the Popular Democratic Party (PDP), who has been very active in the political arena. Docket # 76, ¶ 1-4.⁴ Finally, during 2003, Plaintiff ran for a post in the elections of EP. Docket # 76, ¶ 4.

Plaintiff started working at PREPA in 1988. Docket # 76, ¶ 6. Since then Plaintiff has occupied the positions of laborer, Messenger II, Meter Reader, Collector, and Commercial Services Clerk. Docket # 76, ¶ 6. He occupies the position of Mechanical Systems Clerk IV since 2001. Docket # 76, ¶ 7.

Between April 26, 2004 and July 16, 2004, PREPA published four supervisory positions in different municipalities, for which Plaintiff applied. Docket # 76, ¶ 8. None of these positions were awarded to the Plaintiff, and he did not seek administrative review from these decisions. Docket # 76, ¶ 10. Plaintiff was not interviewed for any of these positions, and was not notified of PREPA's decision not to interview him, or to hire someone else, because PREPA's regulations do not require this notification. Docket # 76, ¶ 72. On the other hand, those candidates who were interviewed but not selected are notified of this decision. Id   The candidates not selected can impeach PREPA's decision in accordance with the

---

³ The Court notes at this point that both parties failed to comply with Local Rule 56(b) in that they did not provide proper supporting documents for some of the facts included in their SUF or that the page referred to by the party is not in the record. As such, the Court will not consider, for the purpose of the pending Motion for Summary Judgment, the following facts set forth by Defendants: Docket # 76, ¶¶ 11, 56, 68, 69, 97, 103, 109 & 114; or by Plaintiff: Docket # 95, ¶¶ 1-5, 8-16, 18 & 20-35. Moreover, Plaintiff's opposing statement of facts denied some of the facts submitted by the Defendants without any supporting documentation. Such denials are inappropriate under Local Rule 56(e) and, when supported by documentation, the Court deems Defendants' proposed facts as admitted. Accordingly, the Court deems admitted Defendants' proposed facts in paragraphs 17, 26, 32, 39, 45, 50-52, 60, 73-77, 84-86, 94, 99, 104, 117 & 121-122.

⁴ PREPA's SUF includes a chronology of all the political posts that Plaintiff has held in the past 20 years. Because Plaintiff's claims are not premised on his political association to the PDP, but on his association to a particular PDP candidate, the Court need not cover in detail Plaintiff's active participation in the PDP affairs. Suffice it to say at this point that he is a PDP member.

**Civil No. 04-2186(SEC)** 6
_____

Complaints Procedure for Non Union Career Employees (CPNUCE). Docket # 76, ¶ 75.

At PREPA, there is the Publication of Positions Section (PPS) in charge of publishing all job openings at PREPA, in accordance with collective bargaining agreements and applicable regulations. Docket # 76 ¶ 13. That is, all matters regarding publication of job openings are centralized in this office. Id. These job openings are published for 10 working days in a publication book, which is distributed to all of PREPA offices throughout the island. Docket # 76, ¶ 23. These are also posted in PREPA's intranet system. Id.

This division also evaluates candidates for all PREPA offices throughout the island. Id. The general supervisor of PPS is Mrs. Ivette Labrador and she has worked there for 27 years. Docket # 76, ¶ 12. Mrs. Labrador evaluates that the applicants comply with the minimum requirements of the position to which they apply, including experience. Docket # 76, ¶ 15. Pursuant to an amendment to Article 7 of the CEPR, effective December 16, 2003, candidates can use experience outside the agency to comply with the experience requirements of a particular position Docket # 76, ¶ 44. However, experience outside PREPA is only acknowledged if the employee fills out a form, and after the Personnel Division evaluates the prior experience. Docket # 76, ¶ 51-52. If an employee requests that certain experience be acknowledged, his request would be included in his personnel file. Docket # 76, ¶ 57.

Mrs. Labrador supervises eight (8) Personnel Transactions Office Clerks I and II (PTOC). Docket # 76, ¶ 26. Each PTOC is assigned different job openings to evaluate all candidates who applied for them and make the initial determination as to the eligibility of each applicant for a particular position. Id. In order to do this, the PTOC examines the candidate's personnel file which would include the employee's prior experience, the tests he has approved, licences and academic qualifications. Docket # 76, ¶ 50.

The PPS handles approximately 2000 vacancies each year. Docket # 76, ¶ 29. Once the evaluation process concludes, the PPS prepares a list of qualified candidates for each position, which Mrs. Labrador approves, and she notifies the supervisor for the area where

**Civil No. 04-2186(SEC)**                                                                                                              7
_____

the vacancies are available. Id. It is the area supervisor who interviews the qualified candidates. Docket # 76, ¶ 39.

According to the Career Employees Personnel Regulations (CEPR), for each position published the supervisor has to interview at least five (5) candidates; if less than five (5) were included in the list of qualified candidates then the supervisor must interview them all before determining who will be hired. Docket # 36, ¶ 34. Although the CEPR does not specify that it is up to the supervisors to conduct the interviews, that is the custom at the agency. Docket # 76, ¶ 63. However, there are no criteria set to guide the supervisor's discretion in selecting which five (5) candidates are to be interviewed among those included in the list of qualified individuals. Docket # 76, ¶ 40. After the supervisor holds an interview he must prepare a copy of the interview and a memorandum adjudicating the position. Docket # 76, ¶ 65. When the supervisor selects a candidate, he must prepare a personnel action request. Id.

Once a candidate is selected for a position, the supervisor must notify, within thirty (30) days of the selection, the applicants who were interviewed but not selected; this notification must also include the name of the person selected. Docket # 76, ¶ 71.

From July 2nd to July 16, 2004, PREPA published a position for Customer Service Supervisor I at the Hormigueros Office. Plaintiff applied to said position and, after the preliminary review described above, he was included in the list of qualified candidates, along with eighteen (18) other applicants. Id. However, Plaintiff was not interviewed nor selected for the position. Id. The requirements for said position were: (1) to have a bachelor's degree from an accredited institution, or (2) to have approved 60 credit hours on business administration or secretarial sciences, plus two (2) years of experience in activities related to a district commercial office in PREPA. Id. If the applicant had a bachelor degree, no experience was necessary for the position. Id. The position also required the applicant to have supervisory skills and a psychological evaluation. Id. Plaintiff met all the above mentioned requirements. Docket # 76, ¶ 55.

**Civil No. 04-2186(SEC)**                                                                                                                          8
_____

From July 2 to July 16, 2004, a vacancy for Warehouse Supervisor in the Mayagüez Office (position number 714-22-M3-221) was also published. Docket # 76, ¶ 59. Plaintiff's name was not included in the list of qualified candidates nor on the list of unqualified candidates. Id. Plaintiff's application contained two different position numbers. Docket # 76, ¶ 60. In a case like this, the PPS rejects the application because the applicant failed to follow the instructions contained in the application; and, as such, it does not consider it. Id.[5]

Defendants' SUF also contained many facts regarding Plaintiff's transfer to the Rincón Office on October, 2003. See, Complaint, Docket # 1, ¶ 50(a). However, many of these facts are supported by statements made by Mr. Efraín Yulfo, who, as per his own deposition, was not Plaintiff's supervisor at the time the alleged transfer was made, was not involved in PREPA's decision to assign Plaintiff to the Rincón Office, nor did he know under whose instructions Plaintiff was assigned to the Rincón Office. See, Docket # 76, ¶¶ 93 & 86. He does not recall the dates the assignment was made neither. Docket #76, ¶ 88. Although Mr. Yulfo states that Plaintiff's position at the time of the assignment (Office Clerk at large) required him to be available to be assigned to the offices of Moca, Rincón or Aguadilla, he does not know why Plaintiff was selected among the other employees to be transferred to Rincón. Docket # 76, ¶¶ 98 & 101. Given the marked ambiguity in Mr. Yulfo's statements, and his apparent lack of personal knowledge regarding the matter of the assignment to the Rincón Office, the Court will not take into consideration the facts proposed by Defendants in this regard which are supported by Mr. Yulfo's deposition. See, Docket # 76, ¶¶ 78-80, 82-101.

---

[5] We note that Defendants' SUF made reference to a position of Warehouse Supervisor in the Utuado Office, for which Plaintiff was not qualified. Docket # 76, ¶¶ 17-19. Defendants also stated that Plaintiff was not included in the list of qualified candidates for position 124-28-M2-221. See, Docket 76, ¶¶ 22, 25. However, the Court will disregard these facts in the discussion of the Motion for Summary Judgment, insofar as Plaintiff's complaint does not allege that he ever applied for and was denied these positions because of political affiliation.

Furthermore, many of the remaining facts proposed by Defendants in relation to Plaintiff's transfer to the Rincón Office must also be disregarded, either because they are irrelevant or because the deponent lacks personal knowledge over the matter. Mrs. Aquino, whose deposition Defendants also included as support of their SUF, stated that she did not supervise Plaintiff, that she had no authority to transfer Plaintiff to the Rincón Office and that she did not recall receiving instructions from her supervisor, Mr. José García-Cabán, to open the Rincón Office. See, Docket # 76, ¶¶ 104, 106-107. Therefore, the Court will not take in consideration the facts contained in Defendants' Statement of Uncontested Facts at ¶¶ 105-108.

On the other hand, the Court finds that the following facts regarding Plaintiff's transfer to the Rincón Office are uncontested. PREPA has no specific procedures established to re-open a local office. Docket # 76, ¶ 109. Many considerations are taken into account in re-opening a local office: (1) pending service orders in the area, (2) news clipping, and (3) public comments in radio programs. Docket # 76, ¶ 111. Among the duties of an at large Customer Service Office Clerk is to be available to render services in other commercial and local offices upon request. Docket # 76, ¶ 112. The Mayor of Rincón had requested PREPA re-open the Rincón local office. Docket # 76, ¶ 117. After eight (8) days, and in view of Plaintiff's complaints, he was transferred back to his prior position in Aguadilla. Docket # 76, ¶ 119. Thereafter, Plaintiff applied for another position from which he could not be transferred, and was selected for the position. Docket # 76, ¶ 120.

In regard to Plaintiff's allegations of hostile work environment, it is uncontested that Plaintiff received answers to his complaints. However, these answers were not directed individually to him, but to other employees as well. Docket # 76, ¶¶ 121-122.

**Applicable Law and Analysis**

Plaintiff's Complaint requests relief under Section 1983 because he was allegedly the subject of political discrimination and suffered various adverse employment actions (*i.e.*

transfer to another office, being disqualified for vacant positions) without due process of law. Section 1983 in itself does not confer substantive rights, but provides a venue for vindicating federal rights elsewhere conferred. See, Graham v. M.S. Connor, 490 U.S. 386, 393-94 (1989). There are two essential elements of a Section 1983 claim: "(I) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." Martínez v. Colón, 54 F.3d 980, 984 (1st Cir. 1995), citing, Chrongis v. Board of Appeals, 811 F.2d 36, 40 (1st Cir. 1987). PREPA's motion does not controvert the fact that the conduct complained of was committed under color of state law. Instead, the heart of PREPA's Motion for Summary Judgment is that Plaintiff's constitutional rights were not violated. We discuss PREPA's arguments below.

**Political Discrimination**

The First Amendment's protection against political discrimination extends to adverse employment actions short of dismissal; that is, "promotions, transfers and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees." Rutan v. Republican Party, 497 U.S. 62, 75 (1990). The government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests- especially his interest in freedom of speech[; for] if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to produce a result which it could not command directly." Id., at 72.

Plaintiff's first amendment claims rely partially on PREPA's failure to promote him to any of the positions to which he applied. He claims that this was done because of his political association with Rosado, who the Defendants did not endorse for the presidency of the EP. As explained in Rutan, if proven true, these allegations would constitute a violation

_____

of Plaintiff's first amendment claims. Rutan, 497 U.S. at 75.

Political discrimination claims must be reviewed through a burden-shifting scheme: the plaintiff must first show that "he engaged in constitutionally protected conduct, and that this conduct was a substantial or motivating factor for the adverse employment decision." Padilla v. Rodríguez, 212 F. 2d 69, 74 (1st Cir. 2000). The burden then shifts to the defendant to show that "it would have taken the same action regardless of the plaintiff's political beliefs- commonly referred to as the Mt. Healthy defense." Id.; see also, Rodríguez-Ríos v. Cordero, 138 F. 3d 22 (1st Cir. 1998).

We must first note that Plaintiff's complaint alleges that he is a PDP member. Although Plaintiff does not claim that the decision-makers at PREPA belonged to a different political party, this is no bar to Plaintiff's political discrimination claim. The First Circuit has held that "[s]upport for a political candidate- whether as an official in his administration or a behind the scenes member of his campaign- is an example of an association that inevitably implicates the right to engage in association for the advancement of beliefs and ideas." Padilla, 212 F 3d at 76.

> The association's constitutionally protected status [is not] altered by the fact that [the defendant] is a member of the same party as the candidates that [plaintiff] chose to support. Clearly, factions within one party can represent different political philosophies. Thus, the underlying principle, freedom to express political beliefs, is very much still at stake. In a case such as this one, where there is a heated battle during the primary, the risk of retaliation against an employee who supported the opposition is just as high as in any other election. Id.

Plaintiff's complaint alleged that "[d]uring [the EP elections], and as a result of the heavily charged political atmosphere created by [Co-defendants] Rosario and Blanes against the opponents of the candidates endorsed by [them], violent verbal and physical confrontations occurred between the group that endorsed Rosado and the group that endorsed his opponent [Valeriano Otero], who had the blessing and support of Rosario and Blanes." Docket # 1, ¶ 47. These allegations fall within the protection of the First Amendment, as

**Civil No. 04-2186(SEC)**                                                                                         12
_____

shown in Padilla. Id.[6]

The gist of PREPA's Motion for Summary Judgment is that Plaintiff "cannot establish that the selection process for the vacant positions for which he applied was carried out in a discriminatory manner as part of a conspiracy to promote non-qualified personnel to the positions he applied for." Docket # 77, at p. 8. However, in support of that contention, PREPA's only evidence is Mrs. Labrador's deposition. Mrs. Labrador, PPS General Supervisor, merely recites the procedure usually followed by her and the employees under her supervision in the screening of applications. However, as per PREPA's own SUF, Mrs. Labrador does not participate in the evaluation of the candidates. Docket # 76, ¶ 37. Furthermore, she states that the PPS' only job is to prepare a list of qualified candidates and that this list is then forwarded to the supervisors who will select the individuals to be interviewed. However, PREPA does not bring forth evidence to controvert Plaintiff's allegations that the vacant positions were awarded to applicants less suited than the Plaintiff because of political discrimination. PREPA has not provided evidence of a non discriminatory reason for Plaintiff's rejection for the supervisory positions, as would be that he was not qualified for the position To the contrary, PREPA's own SUF establishes that Plaintiff was qualified for the position of Supervisor I at the Hormigueros Office, along with eighteen (18) other candidates.

Moreover, PREPA's regulations establish that at least 5 candidates must be

_____

[6]Although it may strike as unusual that the Court makes reference to Plaintiff's complaint at the summary judgment stage, it is proper in this case for two reasons: (1) Plaintiff's complaint was supported by Plaintiff's unsworn affidavit, and (2) Defendants' statement of uncontested facts were not inconsistent with many of the facts well-pleaded in the Complaint. The Court may deny summary judgment even when the non movant fails to provide evidence in opposition to a motion for summary judgment, where the movant's documents do not establish the absence of a genuine issue of fact. Luckett, 618 F.2d at 1383. Defendants' motion for summary judgment does not controvert the issues raised by Plaintiff's complaint.

**Civil No. 04-2186(SEC)**                                                                                                         13
_____

interviewed for a position that has been published. However there is no established criteria to guide the supervisor's discretion when selecting the five individuals to be interviewed. Docket # 76, ¶ 40. PREPA also failed to bring forth evidence that the regulations were in fact followed in this case. PREPA was also in position to bring forth evidence of who the decision makers were behind PREPA's decision to deny Plaintiff's requests for promotion, and of their lack of knowledge of Plaintiff's political associations or their lack of discriminatory animus. They failed to do so. As such, there is no need for Plaintiff to bring affirmative evidence in this respect. His complaint, along with his affidavit, stand uncontested.

Furthermore, PREPA has provided no evidence regarding Plaintiff's rejection for the supervisory positions at the Offices of Aguadilla, Arecibo and Quebradillas. See, Docket # 1, ¶ 50(f). PREPA did not bring evidence of lack of discriminatory animus against Plaintiff. As such, Plaintiff's allegations stand uncontested and there is a triable issue of fact as to the discriminatory nature of PREPA's failure to promote Plaintiff to any of these positions. See, Rodríguez-Ríos, 138 F. 3d at 24 (stating that "a highly charged political atmosphere coupled with the fact that plaintiffs and defendants are of competing political persuasions, may be probative of discriminatory animus."); see also, Padilla, 212 F. 3d at 75 (stating that the fact that the plaintiff was tied to a particular faction, that she campaigned in the primary election against the Defendants, coupled with the fact that the primary election "left serious conflict between the two defined groups within the same political party" was circumstantial evidence that plaintiff was a "conspicuous target" which would alone create an issue of fact on discriminatory animus.") Finally, it is the movant's burden (that is PREPA's) to establish the absence of material facts in dispute and its entitlement to judgement as a matter of law. See, Méndez-Laboy, 424 F.3d at 37. PREPA has not done so.

It is also imperative for the Court to reiterate at this point that "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do

**Civil No. 04-2186(SEC)**                                                                 14
_____

counsel's work, create the ossature for the argument, and put flesh on its bones...[j]udges are not expected to be mindreaders[;] a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace." U.S. v. Zannino, 895 F. 2d 1, 1990; see also, Casillas-Díaz v. Palau, 463 F. 3d 77 (1st Cir. 2006)(same). We see no reason why this Court should dedicate its valuable and limited time and resources in doing Counsel's work. As such, PREPA's Motion for Summary Judgment in regards to their failure to promote Plaintiff to any of the positions mentioned above is **DENIED**.

However, Plaintiff's complaint also sought redress for PREPA's denial to promote him to the position of Warehouse Supervisor in the Mayagüez Office. Docket # 1, ¶ 50(f). As to this position PREPA states that Plaintiff included two different positions in one application, which did not follow the instructions contained in the application. Docket # 76, ¶¶ 59 & 60. PREPA argues that in a case like this, the PPS rejects the application without more. These facts would provide PREPA with a Mt. Healthy defense as to Plaintiff's rejection for the position of Warehouse Supervisor at the Mayaguez Office. See, Padilla, 212 F. 2d at 74. Because Plaintiff produced no evidence to controvert this argument, PREPA'S Motion for Summary Judgment in this respect is **GRANTED**, and Plaintiff's claim for political discrimination in regard to his rejection for said position is hereby **DISMISSED WITH PREJUDICE.**

Plaintiff's complaint also alleged that the Defendants, moved by political animus against Plaintiff, transferred him to the Rincón Office where he was submitted to inferior working conditions for eight days (*i.e.* the office lacked potable water, and the restrooms were broken and not fit for use). See, Docket # 1, ¶ 50(a). Plaintiff argues that this transfer violated his rights to be free from political discrimination and his right to due process of law. PREPA argues that the Plaintiff has failed to show that it took adverse employment action against him, and, as such, that he failed to establish a *prima facie* case of political

discrimination in regards to the transfer. We agree.

For Plaintiff to establish a *prima facie* case of discrimination he must first show that he suffered an adverse employment action, and that his political affiliation was a substantial factor behind it. See, González-Piña v. Rodríguez, 407 F. 3d 425, 431 (1st Cir. 2005). The record shows, however, that Plaintiff was assigned to the Rincón Office because of service needs in that area. See, Docket # 76, ¶ 117. Furthermore, as part of Plaintiff's duties he could be assigned to other commercial and local offices when needed. Docket # 76, ¶ 112. Finally, the record shows that after Plaintiff complained of the inferior working conditions at the Rincón Office he was transferred back to the Aguadilla Office where he worked prior to the assignment. Docket # 76, ¶ 118. Thereafter, he was awarded a position from which he could not be transferred. Dokcet # 76, ¶ 120. Plaintiff have provided no evidence to controvert Defendants' explanations. As such, the evidence shows that Plaintiff was only requested to do what his job duties required of him. However, even assuming *arguendo*, that PREPA took adverse employment against him by assigning him to the Rincón Office, PREPA's subsequent action in transferring Plaintiff back to his previous office, and assigning him to a position where he could not be transferred would negate that the transfer was aimed at retaliating against him due to political animus. We conclude that Plaintiff has failed to present evidence of an adverse employment action, let alone a politically motivated one. Therefore, his free association claim, insofar as it is premised in the transfer to the Rincón Office, is hereby **DISMISSED WITH PREJUDICE**.

**Due Process**

Plaintiff also alleges that his due process rights were violated because PREPA did not follow its internal regulations in denying his applications for promotions and in summarily transferring him to the Rincón Office. The threshold question for any due process claim is whether a plaintiff had a property interest over the employment. See, Vélez-Rivera v.

**Civil No. 04-2186(SEC)**                                                                                                             16
_____

Agosto-Alicea, 437 F. 3d 145 (1st Cir. 2006). Plaintiff has failed to establish that he had a property interest over any of the positions to which he applied. Moreover, he failed to establish that he had a property interest in not being transferred to a different PREPA Office. To the contrary, Defendants demonstrated that Plaintiff's position was amenable to this type of transfer when there was need. Furthermore, Defendants showed that Plaintiff was transferred back to his previous position within eight (8) days from the transfer and after he complained of his working conditions. Plaintiff has failed to show that this post-deprivation remedy was inadequate. See, Cronin v. Town of Amesbury, 81 F. 3d 257, 260 (1st Cir. 1996)(holding that a plaintiff "cannot succeed on his procedural due process claim unless he can show that the state failed to provide him with an adequate postdeprivation remedy.") Therefore, we find Plaintiff's due process claims without merit. PREPA's Motion for Summary Judgment, as it relates to Plaintiff's due process claims, is hereby **GRANTED**. Plaintiff's due process claims are **DISMISSED WITH PREJUDICE.**

Finally, PREPA seeks the dismissal of "some" of Plaintiffs claims because they are allegedly time-barred. See, Docket # 77, at p. 22. PREPA fails to identify which claims are time-barred and to make a coherent argument. As such, the court will not dwell on this point. As stated above, a litigant has an obligation "to spell out its arguments squarely and distinctly, or else forever hold its peace." Zannino, 895 F. 2d at, 1990; see also, Casillas-Díaz, 463 F. 3d 77.

PREPA also argues that dismissal of the pendent state law claims is proper once all federal law claims are dismissed. Because some of Plaintiff's first amendment claims are still alive, this argument is inapplicable and need not be discussed further.

**Motions to Strike**

Plaintiff has also moved to exclude certain witnesses and documentary evidence which Defendants announced for the first time in the Pretrial Memorandum (Docket #92).

**Civil No. 04-2186(SEC)** 17
_____

See, Dockets ## 99 & 100. These motions are unopposed. See, Docket # 114. Plaintiff argues that the Court should strike the following witnesses: Ivette Labrador, Julia Arelis Aquino, José García Fabián, Francisco Santiago Rodríguez and Representative Payroll Division. Plaintiff argues that the Defendants failed to announce these witnesses in their initial disclosures as required by Fed. R. Civ. P. 26. See, Docket # 99. Plaintiff also contends that Defendants announced in the Pretrial Memorandum, a letter dated May 15, 2006 which refers to an internal investigation in regards to complaints of hostile environment in the Aguadilla Office where Plaintiff worked. Plaintiff states that this letter was disclosed for the first time in January, 2007, in violation of the Federal Rules of Civil Procedure.

Fed. R. Civ. P. 26(a)(1) provides that "[a] party must, without awaiting a discovery request, provide to other parties: (A) the name, and if known, the address and telephone number of each individual likely to have information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information; (B) a copy of, or a description by category and location of , all documents, electronically stored information, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment." Furthermore, Fed. R. Civ. P. 37(c)(1) provides that "[a] party that **without substantial justification** fails to disclose information required by Rule 26(a)..., or to amend a prior response to discovery as required by Rule 26(e)(2), is not, **unless such failure is harmless,** permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed."(our emphasis).

Because Defendants did not oppose Plaintiff's motions, the Court takes as true Plaintiff's allegations; also, the Court is in no position to determine whether there was substantial justification in Defendants' failure to disclose the aforementioned witnesses and documents, or if said failure was harmless to the Plaintiff. As such, Plaintiff's Motion to

**Civil No. 04-2186(SEC)**                                                                                                          18
_____

Strike Witnesses is hereby **GRANTED**. Defendants will not be allowed to introduce these witnesses' testimony during trial.

As to Plaintiff's Motion to Strike Defendants' Documentary Evidence (Docket # 100), it is **GRANTED in part and DENIED in part**. The Court will exclude the May 2006 letter. However, because Plaintiff failed to identify the remaining documents he sought to strike, and to advise the Court of the circumstances surrounding each document, the Court will not exclude any other document at this point.

**Conclusion**

As per the discussion above, Defendants' Motion for Summary Judgment (Docket # 75) is **GRANTED in part and DENIED in part**. Plaintiff's section 1983 claims for violation of his due process rights are hereby **DISMISSED WITH PREJUDICE.** Plaintiff's first amendment claim, insofar as it relates to Defendants' failure to promote Plaintiff to the position of Warehouse Supervisor in the Mayagüez Office, is also **DISMISSED WITH PREJUDICE**. Pending before the Court are Plaintiff's first amendment claims in regard to Defendants' failure to promote the Plaintiff to the other positions mentioned in the complaint and for political harassment. Pendent state law claims are also before the Court. Partial Judgment shall be entered accordingly.

In light of the Court's holding today, the parties are hereby **ORDERED** to amend their Proposed Pretrial Order in a way consistent with this opinion by 10/5/2007. A **Pretrial and Settlement Conference is hereby scheduled for 10/10/2007 at 2:30 P.M**, in the undersigned's Chambers. **Jury Trial is also set to commence on 11/5/2007.** As such, the parties are hereby **ORDERED** to file JOINT Proposed Jury Instructions, JOINT Proposed Voir Dire and JOINT Proposed Verdict Forms by **10/29/2007**. **The Court also forewarns the parties that these filings must be made JOINTLY.** The parties may include a separate section whereby they include questions or instructions that they suggested but that were

**Civil No. 04-2186(SEC)** 19
_____

objected by the adverse party. Failure to comply with this order will result in the striking of the filings and sanctions may be imposed. *Motions in Limine* are due by 10/29/2007.

        **SO ORDERED.**

    In San Juan, Puerto Rico, this 20th day of September, 2007.

                      S/ *Salvador E. Casellas*
                      SALVADOR E. CASELLAS
                      U.S. Senior District Judge